**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**EICLE FARRACKAN**
**3800 Powell Lane Unit 312**
**FALLS CHURCH, VA 22041**

**Plaintiff,** **Civil Action No.: 1:26-cv-3629**

**v.**

**DAVIS MEMORIAL GOODWILL INDUSTRIES**
**d/b/a GOODWILL OF GREATER WASHINGTON**
**1140 3rd Street NE, Suite #350**
**Washington, D.C. 20002**

**Defendant.**

---

**COMPLAINT**

---

Plaintiff Eicle Farrackan, and for his complaint against Davis Memorial Goodwill Industries d/b/a Goodwill of Greater Washington (hereinafter, "Goodwill"), and respectfully states as follows:

**PARTIES**

1. Eicle Farrackan ("Plaintiff" or "Farrackan") is a resident of the state of Virginia.
2. Davis Memorial Goodwill Industries d/b/a Goodwill of Greater Washington ("Defendant" or "Goodwill") is a non-profit corporation headquartered in Washington, D.C. 20002.

**JURISDICTION AND VENUE**

3. This Court has subject-matter jurisdiction over Plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

4. This Court has supplemental jurisdiction over Plaintiff's claims under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 *et seq.* ("DCHRA"), under 28 U.S.C. § 1367(a), because those claims arise from the same facts as Plaintiff's FMLA claims and form part of the same case or controversy.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant is headquartered in, and resides in, the District of Columbia. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Columbia.

## FACTUAL BACKGROUND

6. Goodwill Industries operates a network of retail stores throughout the greater Washington, D.C. region.

7. One of their network affiliates is Goodwill of Greater Washington.

8. Goodwill hired Eicle Farrackan on September 5, 2023 as a Production Team Leader at its store located at 10 S. Glebe Road, Arlington, Virginia.

9. On or about February 18, 2024, Goodwill transferred Farrackan to its store located at 7031 Columbia Pike, Annandale, Virginia.

10. On or about December 8, 2024, Goodwill promoted Farrackan to Production Assistant Manager. Farrackan held that position until his termination.

11. Farrackan maintained a clean record throughout his employment with Goodwill. Farrackan was never disciplined before his termination on September 18, 2025.

12. On or around July 2025, Cynthia Villarroel Vargas became Farrackan's General Manager and his direct supervisor.

13. On or around August 11, 2025, Farrackan obtained a written note from his podiatrist taking him off work for one week to recover from plantar fascial fibromatosis of his right heel and

foot. At a follow-up appointment on August 18, 2025, Farrackan's podiatrist fitted him with a CAM walking boot and verbally instructed him not to work more than six hours per day while wearing it.

14. On August 19, 2025, Farrackan returned to work wearing the walking boot and personally gave Villarroel Vargas his medical documentation.

15. Farrackan explained his condition to Ms. Villarroel Vargas and requested a reasonable accommodation consisting of (a) reassignment to a work area where he could perform his duties while wearing the boot, and (b) a modified schedule limiting him to no more than six hours of work per day, consistent with his physician's restrictions.

16. Villarroel Vargas told Farrackan that she was new to the General Manager position and was unsure how to handle his accommodation request. She said she needed to speak with Jose Padro and would follow up with him.

17. No one from Goodwill ever followed up with Farrackan about his request. Padro never spoke with him about it. No one from People & Culture contacted him, requested additional medical documentation, informed him whether his request was approved or denied, or discussed any accommodation or alternative work arrangement with him.

18. Because Goodwill never responded, Farrackan continued performing his normal job duties while wearing the walking boot.

19. Goodwill's practice for medical documentation was to be uploaded into the company's Dayforce system, where People & Culture and other managers could access it. Farrackan provided his documentation directly to Villarroel Vargas and notified her of his condition and requested accommodation.

20. Also in August 2025, Farrackan began experiencing prostate-related symptoms that required medical evaluation and treatment.

21. Farrackan's heel condition and prostate-related symptoms substantially limited his ability to walk, to stand for extended periods, to lift, and to perform manual tasks. Farrackan's heel condition also required continuing treatment by a health care provider.

22. On August 20, 2025, Farrackan sent a written request for FMLA leave by email describing his heel condition and prostate-related symptoms. The request was directed to Defendant's People & Culture leadership, Cheryl Walker and Talby Afable, to his Regional Manager, Jose Padro, and to his General Manager, Villarroel Vargas.

23. Goodwill's People & Culture D.C. department administered Farrackan's leave request, and maintained the medical documentation.

24. Goodwill acknowledged the request the same day. Benefits Specialist Ashley Darby emailed Farrackan an FMLA packet, including a Health Care Provider Certification form, and asked that the completed certification be returned to People & Culture.

25. On or about August 23, 2025, Farrackan's son dislocated his knee. The unexpected medical expenses delayed Farrackan's own medical appointments, laboratory work, and completion of the certification form.

26. Farrackan told Darby about the delay and asked for additional time to submit the certification. Darby asked him to keep her updated every two weeks. Farrackan did so, and his leave request remained open.

27. Goodwill never denied Farrackan's leave request, never advised him that the request was closed, and never told him that any deadline had expired.

28. Goodwill knew Farrackan had a medical condition and knew he was pursuing leave.

29. On or about September 16, 2025, Villarroel Vargas asked Goodwill's Safety & Loss Prevention team to open an investigation into Farrackan's pricing practices.

30. Farrackan and Villarroel Vargas shared a computer in the store office. Each had a separate account, and each was expected to close the account when not using it.

31. On September 18, 2025, Villarroel Vargas left her company email account open and displayed on that shared computer. From the open screen, Farrackan learned for the first time that he was under investigation. No one at Goodwill had ever told him about any investigation against him.

32. Later that day, Safety & Loss Prevention Specialist James Schafer interviewed Farrackan about pricing. Villarroel Vargas and Safety & Loss Prevention Specialist Andre Lomax were present. The interview lasted for approximately five to six hours.

33. During the interview, Goodwill suddenly started accusing Farrackan of changing prices for customers and of making false statements. Farrackan vehemently denied the allegations.

34. Goodwill suspended Farrackan without pay on that day pending completion of its investigation.

35. According to Goodwill, a store manager cannot issue disciplinary action without the approval of the manager's Regional Director and a representative of Goodwill's People & Culture department.

36. On September 19, 2025, Goodwill's Director of Safety & Loss Prevention, Nicholas Paczkowski, reported the investigation findings to Regional Manager Jose Padro and to Talby Afable of People & Culture.

37. Padro and Afable then met with Senior Regional Director Melissa Hook to review the investigation findings, and that "Goodwill management and People & Culture decided to terminate" Farrackan.

38. After the decision was made, on September 29, 2025, Padro informed Villarroel Vargas of the decision, and the two of them called Farrackan to tell him that he had been terminated.

39. Padro, Afable, Hook, and Paczkowski are members of Goodwill's regional and corporate leadership who work out of, and report to, Goodwill's headquarters at 1140 3rd Street NE, Washington, D.C. 20002.

40. The decision to terminate Farrackan was made, approved, and documented by Goodwill's corporate leadership at or through Goodwill's headquarters in Washington, D.C.

41. After his termination, Farrackan spoke with Goodwill's Director of Talent Management, Cheryl Wesley; its Vice President of People & Culture, Robert Chambers; and its General Counsel, each of whom confirmed that the termination was "warranted." Goodwill's General Counsel sent Farrackan an email about his termination on November 24, 2025.

42. Wesley, Chambers, and Goodwill's General Counsel work out of Goodwill's headquarters in Washington, D.C., and reviewed and ratified the decision to terminate Farrackan there.

43. The decision to terminate Farrackan, and Goodwill's review and ratification of that decision, occurred in the District of Columbia.

## CAUSES OF ACTION

### Count 1: Disability Discrimination – District of Columbia Human Rights Act D.C. Code § 2-1402.11(a)(1)

44. Plaintiff incorporates all paragraphs herein *seriatim*.

45. Defendant was an "employer," and Plaintiff was an "employee," within the meaning of D.C. Code § 2-1401.02.

46. Plaintiff was an individual with a disability within the meaning of D.C. Code § 2-1401.02(5A). His heel condition and prostate-related symptoms substantially limited one or more of his major life activities, including walking, standing, lifting, and performing manual tasks.

47. Defendant had a record of Plaintiff's impairments and regarded him as having them.

48. Plaintiff was able to perform the essential functions of his position, with or without reasonable accommodation.

49. Defendant, by and through its agents or supervisors, suspended Plaintiff without pay and terminated his employment.

50. Defendant suspended and terminated Plaintiff because of his disability, in violation of D.C. Code § 2-1402.11(a)(1).

51. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, lost future earnings, emotional distress, and humiliation.

52. WHEREFORE, Plaintiff prays for judgment against Defendant for all damages allowable by law, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 2: Failure to Accommodate – District of Columbia Human Rights Act**
**D.C. Code § 2-1402.11(a)**

53. Plaintiff incorporates all paragraphs herein *seriatim*.

54. Plaintiff was an individual with a disability within the meaning of D.C. Code § 2-1401.02(5A).

55. Plaintiff could perform the essential functions of his position with a reasonable accommodation.

56. Plaintiff requested a reasonable accommodation after developing a serious health condition that limited his ability to walk and stand for extended periods, to move about the sales and production floors, and to lift.

57. Plaintiff also requested (a) reassignment to a work area where he could perform his duties while wearing the boot, and (b) a modified schedule limiting him to no more than six hours of work per day, consistent with his physician's restrictions.

58. Plaintiff's communications placed Defendant on notice that he was experiencing medical limitations and required workplace accommodation.

59. Villarroel Vargas told Plaintiff that she needed to speak with Regional Manager Jose Padro about his request. Upon information and belief, Padro is part of Defendant's regional leadership that works out of Defendant's headquarters in Washington, D.C.

60. Defendant did not engage in the interactive process concerning the limitations caused by Farrackan's serious health condition.

61. Each accommodation Plaintiff requested was reasonable and would not have imposed an undue hardship on Defendant.

62. Defendant failed to provide a reasonable accommodation for Plaintiff's known physical limitations, in violation of D.C. Code § 2-1402.11(a).

63. As a direct and proximate result of Goodwill's conduct, Farrackan has suffered lost wages and benefits, lost future earnings, physical injury, emotional distress, and humiliation.

64. WHEREFORE Plaintiff prays for judgment against Defendant for all damages allowable by law, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 3: Retaliation – District of Columbia Human Rights Act**
**D.C. Code § 2-1402.61(a)**

65. Plaintiff incorporates all paragraphs herein *seriatim.*

66. Plaintiff engaged in activity protected by the DCHRA when he requested a reasonable accommodation due to the limitations caused by his serious health condition.

67. Defendant knew that Farrackan had requested a reasonable accommodation.

68. Defendant thereafter suspended Plaintiff without pay and terminated his employment. Each was a materially adverse action.

69. The decision to terminate Plaintiff was made, approved, and ratified by Defendant's corporate leadership in the District of Columbia, as alleged above.

70. A causal connection exists between Plaintiff's protected activity and Defendant's materially adverse actions.

71. Defendant retaliated against Plaintiff for exercising rights protected by the DCHRA, in violation of D.C. Code § 2-1402.61(a).

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, lost future earnings, emotional distress, and humiliation.

73. WHEREFORE Plaintiff prays for judgment against Defendant for all damages allowable by law, compensatory damages, punitive damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 4: Interference – Family and Medical Leave Act**
**29 U.S.C. § 2615(a)(1)**

74. Plaintiff incorporates all paragraphs herein *seriatim*.

75. Defendant was an employer covered by the FMLA under of 29 U.S.C. § 2611(4).

76. Plaintiff was an eligible employee under 29 U.S.C. § 2611(2).

77. Plaintiff suffered from one or more serious health conditions within the meaning of 29 U.S.C. § 2611(11).

78. Plaintiff's serious health conditions required continuing evaluation and treatment by health care providers and entitled him to medical leave under 29 U.S.C. § 2612(a)(1)(D).

79. On August 20, 2025, Plaintiff provided Defendant with written notice that he required FMLA leave because of his ongoing health conditions.

80. Plaintiff provided sufficient information to place Defendant on notice that his requested leave could qualify for protection under the FMLA.

81. Defendant acknowledged Plaintiff's request and provided him with an FMLA certification packet.

82. Defendant granted Plaintiff additional time to complete the certification process and instructed him to provide updates every two weeks.

83. Plaintiff complied with Defendant's instruction, continued communicating with Defendant, and continued pursuing his request for FMLA leave.

84. Defendant did not notify Plaintiff that his request had been denied, that the certification deadline had expired, or that his request had been closed.

85. Nevertheless, while Plaintiff's FMLA request remained pending, Defendant initiated an investigation into him, suspended him without pay, and terminated his employment.

86. By suspending and terminating Plaintiff while he was exercising and attempting to exercise his right to medical leave, Defendant interfered with, restrained, and denied Plaintiff's exercise of rights protected by the FMLA.

87. Defendant's actions prevented Plaintiff from completing the leave-certification process and receiving the job-protected medical leave to which he was entitled.

88. Plaintiff was prejudiced by Defendant's interference. He was denied the opportunity to take protected leave and lost his employment.

89. Defendant did not act in good faith and had no reasonable grounds to believe that its conduct complied with the FMLA.

90. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, salary, employment benefits, and other compensation.

91. WHEREFORE Plaintiff prays for judgment against Defendant for all damages allowable by law, compensatory damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**Count 5: Retaliation – Family and Medical Leave Act**
**29 U.S.C. § 2615(a)(2)**

92. Plaintiff incorporates all paragraphs herein *seriatim*.

93. Plaintiff engaged in activity protected by the FMLA when he requested medical leave for his serious health conditions on August 20, 2025.

94. Plaintiff continued engaging in protected activity when he communicated with Defendant regarding the certification process and continued pursuing his request for leave.

95. Defendant knew that Plaintiff had requested and was pursuing FMLA-protected leave.

96. Defendant thereafter suspended Plaintiff without pay, and terminated his employment.

97. A causal connection exists between Plaintiff's request for FMLA leave and Defendant's adverse action.

98. The temporal proximity between Plaintiff's leave request and the investigation support a reasonable inference of retaliation.

99. Defendant's stated reasons for suspending and terminating Plaintiff were false and pretextual.

100. Defendant retaliated against Farrackan for exercising and attempting to exercise rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

101. Defendant did not act in good faith and had no reasonable grounds to believe that its conduct complied with the FMLA.

102. As a direct and proximate result of Defendant's conduct, Farrackan has suffered lost wages, salary, employment benefits, and other compensation.

103. WHEREFORE Plaintiff prays for judgment against Defendant for all damages allowable by law, compensatory damages, pre-judgment interest at the legal rate, post-judgment interest at the judgment rate, attorney's fees as may be awarded by the Court, the costs of this action, equitable relief, and such other and further relief as may appear warranted by this action.

**PRAYER FOR RELIEF**

**PLAINTIFF DEMANDS TRIAL BY JURY**

Dated this October 16, 2026

By */s/Ikechukwu Emejuru*______

Ikechukwu Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: (240)559-2984
iemejuru@emejurulaw.com